IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF TEXAS

GALVESTON DIVISION

| | |
|---|---|
| BENNY WAYNE STEWART, #397292 § | |
| § | |
| § | |
| v. § | CIVIL ACTION NO. G-06-404 |
| § | |
| NATHANIEL QUARTERMAN, § | |
| DIRECTOR OF TDCJ-CID § | |

**REPORT AND RECOMMENDATION**

Before the Court is the Petition for a Writ of Habeas Corpus of Benny Wayne Stewart, a prisoner in the Texas Department of Criminal Justice - Correctional Institutions Division ("TDCJ-CID") (Instrument No. 1). Respondent filed a Motion for Summary Judgment with Brief in Support (Instrument No. 12) seeking the dismissal of Petitioner's writ. Petitioner filed a Response (Instrument No. 14) and has also filed a Motion for Evidentiary Hearing (Instrument No. 15). Also before the Court is Petitioner's Motion for Temporary Restraining Order and Preliminary Injunction. (Instrument No. 11). Having carefully considered the Petition, the parties' motions and briefs, and the state court records, the Court submits its Report and Recommendation to the District Court.

The Court has jurisdiction over the parties and subject matter pursuant to 28 U.S.C. §§ 2241 and 2254. The State has custody of Petitioner pursuant to a judgment and sentence entered by the 272nd Judicial District Court of Brazoria County, Texas in Cause No. 15,660, on May 1, 1985. Petitioner pled guilty to robbery and was sentenced to twenty years imprisonment. Petitioner does not challenge his conviction in the instant case, but instead challenges the revocation of his

1

mandatory supervision. Petitioner was last released to mandatory supervision on September 11, 1997, and his release was revoked on April 20, 2005.

On November 14, 2005, Petitioner filed an application for a state writ of habeas corpus challenging his last revocation proceeding. The state trial court issued an Order on December 7, 2005, recommending that Petitioner's request for habeas relief be denied and ordering the transmittal of Petitioner's Article 11.07 writ to the Texas Court of Criminal Appeals ("TCCA"). *Ex parte Stewart*, Applic. No. WR-15,363-07 at 51. The TCCA denied Petitioner's state writ without written order on May 24, 2006. *Ex parte Stewart*, Applic. No. WR-15,363-07.

Petitioner filed the instant writ on June 13, 2006. In his Petition he claims that he was denied due process when his mandatory supervision was revoked (Fed. Writ Pet. at 7, 10) and, construing his Petition very liberally, it appears he also claims that the attorney who represented him during the revocation proceeding provided him with ineffective assistance of counsel. Fed. Writ Pet. at 15; 18-19. The Court will address Petitioner's claims in turn.

*A. Revocation of Mandatory Supervision Claim*

Petitioner's first claim is that his mandatory supervision was revoked in violation of his rights under the Due Process Clause. In support of his claim, Petitioner alleges that Peggy Sephus, a Program Administrator I in the Warrant Section of TDCJ-CID, filed an affidavit in which she stated that the "Certificate of Mandatory Supervision signed by Stewart on 09-11-1997, showing his agreement to abide by the rules and conditions of the contract listed thereon; to show he is on Mandatory Supervision, subject to said rules." Fed. Writ Pet. at 11-12. Petitioner claims that Peggy Sephus perjured herself because the Certificate clearly reflects that there was no signature from him and, instead, it reflects that he refused to sign the document. *Id*. at 14; Ex. B. Petitioner alleges that

Peggy Sephus' statement that his signature was on the Certificate "played a significant role in revocation and that for the Board's belief and reliance on Peggy Sephus' sworn statement concerning its existence on the Mandatory Supervision Certificate, Petitioner would not have been revoked." Fed. Writ Pet. at 15. Petitioner further alleges that, since he did not sign the Certificate, none of the conditions applied to him and, therefore, his revocation, based on a finding that he violated conditions #2 and #4, was improper. Fed. Writ. Pet. at 14-15.

Texas law draws distinctions between parole and mandatory supervision. Section 508.154 of the Texas Government Code provides, in relevant part, the following:

> (a) An inmate to be released on parole shall be furnished a contract stating in clear and intelligible language the conditions and rules of parole.
>
> (b) Acceptance, signing, and execution of the contract by the inmate to be paroled is a precondition to release on parole.
>
> (c) An inmate released to mandatory supervision shall be furnished a written statement stating in clear and intelligible language the conditions and rules of mandatory supervision.
>
> (d) A releasee while on parole or mandatory supervision must be amenable to the conditions of supervision ordered by a parole board.

Tex.Gov't Code § 508.154. Petitioner was not released to parole, but to mandatory supervision. Accordingly, under Texas law, he was never required to sign any document, yet he was statutorily obligated to comply with the conditions and rules of mandatory supervision. Tex.Gov't Code § 508.154(c)-(d). Moreover, regardless of whether Petitioner signed the document or not, he would still have been released to mandatory supervision and, since he is not disputing that he was furnished a written statement of the conditions and rules, he would still be subject to revocation based on a violation of the conditions and rules of mandatory supervision. Petitioner's contention that the

Board could not legitimately return him to prison for violation of mandatory supervision rules because he did not "contractually" agree to be bound by the conditions or rules, is nothing more than a frivolous claim.

Petitioner's allegation that the Board relied exclusively on the "perjured" affidavit of Peggy Sephus in revoking his mandatory supervision is also without basis. Contrary to his contentions, the record clearly reflects that the hearing officer relied upon several sources of information in reaching the conclusion that Petitioner had violated certain rules and conditions and that his mandatory supervision should be revoked. In particular, the hearing officer made the following Findings of Fact and Conclusions of Law:

> A. I find from Exhibit A the offender is under the authority of the Board of Pardons and paroles and is subject to and knowledgeable of the rules / conditions of his/her administrative release status.
>
> B. Regarding the alleged Rule #2 (Theft, 07-23-04), and #4 (Failure to Obtain Written Permission of Parole Officer Prior to Leaving State of Texas, 09-04-04) violations, I relied on the following information:
>
> - OFFENDER's admission to each allegation,
> - Exhibit A (Affidavit Sworn by Peggy SEPHUS)
> - Exhibit B (Certificate of Mandatory Supervision with Attachments)
> - Exhibit C (Certificate of Disposition)
> - Exhibit D (Judgment/Sentence)
> - Exhibit E (Houston Police Department Offense Report)
>
> ** Testimony of OFFENDER: In September 2004 he went to Oklahoma to take Roger PATE to see his family. He did not obtain written permission from his Parole Officer to leave the State of Texas. He was at PATE'S family residence when the Police came to the house and arrested him. He was in Oklahoma for one day. OFFENDER declined to testify regarding the theft offense.
>
> I conclude OFFENDER did violate Rule #2 and #4.

Fed. Writ Pet., Ex. B. Furthermore, while the form affidavit of Peggy Sephus was not accurate concerning the existence of Petitioner's signature, it is difficult to see the harm in this oversight since the actual Certificate itself, which clearly reflects that Petitioner had "refused to sign," was not only attached to the affidavit, but also separately available to and relied upon by the hearing officer and Board. Petitioner's claim that the hearing officer and the Board revoked Petitioner's mandatory supervision based "exclusively" on the purportedly false statement of Peggy Sephus must be dismissed as it is completely without merit.

Finally, the Court observes that in his Opposition, Petitioner appears to attempt to make broader claims that his due process rights were violated because the Board and State did not adhere to state procedural law by complying with Texas Code of Criminal Procedure Article 42.12, § 22[1] and Article 51.13.[2] Pet'r Opp. at 17-20. Petitioner also appears to claim that the misdemeanor charge could not be used to revoke his mandatory supervision under Texas Government Code § 508.282(c)(1)(B) because the charges against him for this offense were disposed of when his release to mandatory supervision was "continued or modified and the inmate or person is released from county jail." Pet'r Opp. at 17-18; *see also*, Pet'r Mot. Prelim. Inj. at 15.

A state prisoner seeking federal court review of his conviction must assert a violation of a federal constitutional right. Federal habeas corpus relief will not issue to correct errors of state constitutional, statutory, or procedural laws, unless a federal issue is also presented. *Estelle v.*

---

[1] Article 42.12 contains provisions concerning court ordered community supervision. In particular, § 22 addresses a state judge's discretion to impose additional conditions on a defendant if the court continues or modifies community supervision after determining that the defendant violated a condition of community supervision.

[2] Article 51.13 contains the provisions of Texas' Uniform Criminal Extradition Act. The Act sets forth the procedure for extradition and provides for a written waiver of extradition proceedings.

*McGuire*, 502 U.S. 62, 67-68 (1991); *Green v. Johnson*, 160 F.3d 1029, 1035 (5th Cir. 1998); *see also Cook v. Morrill*, 783 F.2d 593, 596 (5th Cir. 1986) (a federal court will not review a state court's interpretation of its own law in a federal habeas corpus proceeding). Federal courts "do not sit as a 'super' state supreme court" in such a proceeding to review errors under state law. *Martin v. Wainwright*, 428 F.2d 356, 357 (5th Cir. 1970); *see also Cronnon v. Alabama*, 587 F.2d 246, 250 (5th Cir. 1979). Petitioner has failed to allege or show that these alleged violations of Texas law constituted a violation of any Constitutional right and, as such, he is not entitled to federal habeas relief for this claim. *See Boyd v. Puckett*, 905 F.2d 895, 896 (5th Cir. 1990); *Williams v. Wainwright*, 414 F.2d 806 (5th Cir. 1969).

Notwithstanding this fact, Petitioner received all the procedural due process that he was entitled to under federal law. In *Morrissey*, the Court recognized that a parole revocation proceeding is not a criminal prosecution and, as such, "the full panoply of rights due a defendant in such a proceeding does not apply . . ." *Morrissey v. Brewer*, 408 U.S. 471, 480 (1972). Due process requires certain minimum safeguards to protect the limited liberty interests at stake in a revocation hearing. A parole violator is entitled to the following: (1) written notice of the alleged parole violations; (2) disclosure of evidence against him; (3) the opportunity to be heard personally and to present evidence; (4) the right to confront and cross-examine witnesses against him; (5) a hearing before a neutral and detached body; (6) a written statement by the fact finders describing the evidence reviewed and the reasons for revoking parole. *Id.* at 489.

Here, Petitioner waived extradition. While Petitioner claims that he did not sign the Mandatory Supervision Certificate, he quite clearly does not claim that he was not provided a copy of it, nor does he allege that he was not afforded proper notice of the alleged violations or the

hearing. Petitioner was provided an attorney to represent him at the revocation proceeding, he was afforded a hearing, and he not only had the opportunity to be heard, but he, in fact, gave testimony at the hearing. Petitioner also clearly does not allege that he was not provided the hearing officer's finding and conclusions. Even though Petitioner obviously disagrees with the decision reached by the hearing officer and the Board, the record demonstrates that the fact-finder's conclusion that the Petitioner violated the rules of his release on mandatory supervision, which was approved by a three member board, had support in the evidence. Petitioner, having shown no violation of his liberty interests or constitutional right to due process in the revocation of his mandatory supervision, is not entitled to federal habeas relief on this ground. *Thomas v. Torres*, 717 F.2d 248, 249 (5th Cir. 1983).

In conclusion, for all the reasons discussed, the Court finds Petitioner's first claim to be without merit. Furthermore, having failed to establish that the TCCA's decision denying his state habeas corpus application was an unreasonable application of clearly established federal law or an unreasonable application of the facts in light of the evidence presented, Petitioner's federal writ must be denied. 28 U.S.C. § 2254(d).

The Court therefore **RECOMMENDS** that the Petition be **DENIED** on this point.

### B. *Ineffective Assistance of Counsel Claim*

Petitioner claims that the attorney who represented him at the revocation proceeding provided ineffective assistance of counsel. The Fifth Circuit applied the standard enunciated in *Strickland* when considering a claim that an attorney provided ineffective assistance of counsel at a probation revocation hearing. *Brown v. Cockrell*, 32 Fed.Appx. 126, *1 (5th Cir. 2002). Under *Strickland*, to successfully state a claim of ineffective assistance of counsel, a petitioner must demonstrate (1) that counsel's performance was deficient and (2) that the deficient performance

prejudiced his defense.  *Strickland v. Washington*, 466 U.S. 668, 687 (1984).  A petitioner's failure to establish either prong of Strickland necessarily requires a finding that counsel's performance was constitutionally effective.  *Id.* at 687.

Petitioner alleges that he understood from counsel that allowing the affidavit of Peggy Sephus into evidence without objection would be to his advantage as it revealed "how and why the revocation would be unwarranted." Fed. Writ Pet. at 17.  Petitioner asserts that this advice was erroneous and contends that counsel should have objected to the admission of the affidavit. Petitioner also claims that his attorney erred by not objecting to the State's failure to comply with Articles 42.12 § 22 or 51.13.  However, for the reasons already discussed, there is simply no merit to Petitioner's claims that counsel was deficient in failing to assert these objections. *See Sones v. Hargett*, 61 F.3d 410, 415 n. 5 (5th Cir. 1995) (holding an attorney cannot be judged deficient for failing to raise a frivolous point); *Green v. Johnson*, 160 F.3d 1029, 1037 (5th Cir. 1998) (counsel will not be found deficient for failing to press frivolous or futile issue).  Aside from failing to establish counsel's conduct was deficient, Petitioner has also failed to establish prejudice.  A petitioner cannot satisfy the second prong of *Strickland* with mere speculation and conjecture. *Bradford v. Whitley*, 953 F.2d 1008, 1012 (5th Cir. 1992).  Nor can a petitioner rely on conclusory allegations to satisfy this prong.  *Schlang v. Heard*, 691 F.2d 796, 799 (5th Cir. 1982);  *Koch v. Puckett*, 907 F.2d 524, 530 (5th Cir. 1990).

### C. *Plaintiff's Motion for Temporary Restraining Order & Preliminary Injunction*

Also before the Court is Petitioner's Motion for Temporary Restraining Order and Preliminary Injunction in which he seeks affirmative relief in the form of a Court order directing that he be removed from the illegal restraint of Respondent which he claims was caused by the improper

revocation of his mandatory supervision, and his immediate release from confinement. (Instrument No. 11).

Under Rule 65 of the Federal Rules of Civil Procedure, injunctive relief may be granted if the requesting party makes a clear showing that immediate and irreparable injury, loss, or damage may occur. Fed.R.Civ.P. 65. Injunctive relief, however, is an extraordinary remedy and will not be granted unless the movant, by a clear showing, carries the burden of persuasion. *Mississippi Power & Light Co. v. United Gas Pipe Line Co.*, 760 F.2d 618, 621 (5th Cir. 1985). The Court, having reviewed the allegations in his Motion, along with his Petition for Writ of Habeas Corpus, finds that Petitioner has simply not carried his burden of showing that he will suffer immediate and irreparable injury, loss, or damage if this motion is not granted, nor has he established the probability of success on the merits.

Therefore, having failed to meet the necessary criteria, this Court **RECOMMENDS** that Petitioner's Motion for Temporary Restraining Order and Preliminary Injunction (Instrument No. 11) be **DENIED**.

## CONCLUSION

For all the reasons stated herein, the Court **RECOMMENDS** that Petitioner's Motion for Temporary Restraining Order and Preliminary Injunction Motion (Instrument No. 11) be **DENIED**; Petitioner's Motion for Evidentiary Hearing (Instrument No. 15) be **DENIED**; Respondent's Motion for Summary Judgment (Instrument No. 12) be **GRANTED**; and the Petition for a Writ of Habeas Corpus of Benny Wayne Stewart (Instrument No. 1) be **DISMISSED with prejudice**.

The Clerk **SHALL** send copies of this Report and Recommendation to the Parties. The Parties **SHALL** have until **May 30, 2007**, to have written objections, filed pursuant to 28

U.S.C. § 636(b)(1)(C), **physically on file** in the Office of the Clerk.  <u>The Objections **SHALL** be electronically filed and/or mailed to the Clerk's Office at P.O. Drawer 2300, Galveston, Texas 77553</u>.  **Any Objections filed SHALL be contained in a written document specifically entitled "Objections to the Report and Recommendation of the Magistrate Judge"**, which will then be forwarded to the District Judge for consideration.   Failure to file written objections within the prescribed time **SHALL** bar the aggrieved party from attacking on appeal the factual findings and legal conclusions accepted by the District Judge, except upon grounds of plain error.

      **DONE** at Galveston, Texas, this _____11th_____ day of May, 2007.

      _____
      John R. Froeschner
      United States Magistrate Judge